MARYLAND CASUALTY COMPANY, demandante y apelante, *v.* BUFFALO LIFE ASSOCIATION y PETRA GUZMÁN VDA. DE ARROYO, demandados y apelados.

Núm. 7100.—*Sometido:* Noviembre 24, 1936. *Resuelto:* Febrero 16, 1937.

*Juan B. Soto, Juan F. Soto* y *Enrique Igaravídez,* abogados de la apelante; *Luis Mercader,* abogado de la apelada Sra. Guzmán.

EL JUEZ ASOCIADO SEÑOR TRAVIESO, emitió la opinión del tribunal.

La demandante, Maryland Casualty Company, apela de una sentencia que declara sin lugar su demanda contra la Buffalo Life Association y Petra Guzmán viuda de Arroyo. Sustancialmente alega:

Que el día 1 de abril de 1931 la demandada Buffalo Life Association aseguró la vida de Victorio Arroyo Laracuente por $5,000, que se comprometió a pagar a su muerte, a Petra Guzmán de Arroyo, la otra demandada.

Que Victorio Arroyo Laracuente falleció en Arecibo el día 26 de noviembre de 1933, hecho que la demandante comunicó a la Buffalo Life Association mediante copia certificada del acta de defunción.

Que el día 18 de noviembre de 1933 el asegurado cedió a la demandante la referida póliza de $5,000, que lleva el número H–8092, en pago de la suma de $4,466.23 que le adeudaba, hecho que la demandante también notificó a la Buffalo Life Association.

Que la demandante como cesionaria, y por información y creencia, Victorio Arroyo Laracuente, cumplieron siempre con todas las condiciones de la póliza, a pesar de lo cual, la Buffalo Life Association no ha pagado a la demandante los $5,000 importe de la póliza ni ninguna parte de ella.

Suplica que se dicte sentencia disponiendo que los $5,000 importe de la póliza le pertenecen y le deben ser pagados con sus intereses desde la fecha de la demanda.

La demandada Petra Guzmán contestó atacando la suficiencia de la demanda, negando unos hechos y aceptando otros. Y como defensa especial expuso que la demandante y Victorio Arroyo Laracuente, pocos días antes de su muerte "cambiaban impresiones sobre transacción que nunca llevaron a cabo, y con motivo de ello Arroyo le envió a la primera dos pólizas, una por $5,000, núm. H–8092, de la Buffalo Life Association, y otra por $2,000, núm. D–4150, de la Occidental Life Insurance Co., ambas del asegurado Victorio Arroyo Laracuente y Petra Guzmán como beneficiaria, y

cuyas pólizas la demandante habría de examinar y devolver al señor Arroyo oportunamente;" que Arroyo falleció sin ultimar la transacción, reteniendo la demandante las dos pólizas hasta el día 4 de diciembre de 1933 en que devolvió a la beneficiaria la número D–4150 quedándose con la H–8092, que no ha querido devolver.

Radicó también una contrademanda en que alega dos causas de acción. A virtud de la primera solicita de la corte que la declare dueña y única beneficiaria de la póliza núm. H–8092; por la segunda pide daños y perjuicios que alega se le ocasionaron por la Maryland Casualty Company al retener ésta en su poder la referida póliza H–8092, impidiéndole cobrarla y colocar su importe a un interés anual del 8 por ciento.

Visto el caso sin asistencia de la Buffalo Life Association, a quien le fué anotada la rebeldía, la corte dictó sentencia con los siguientes pronunciamientos:

1. Sin lugar la demanda.
2. Con lugar la primera causa de acción de la contrademanda, y en su consecuencia, condenando a la Maryland Casualty Company a que devuelva y entregue a la contrademandante Petra Guzmán viuda de Arroyo, la póliza número H–8092, supra.
3. Todo ello sin especial condenación en costas.

Los fundamentos de dicha sentencia fueron, a saber: que a la muerte de Arroyo no se había consumado contrato alguno entre la Maryland Casualty Co. y él, por virtud del cual éste le hubiera hecho cesión de la póliza H–8092 a la primera en pago de los $4,466.23, para lo cual era requisito el consentimiento de Arroyo, que no llegó a prestarse nunca.

La demandante apeló señalando los siguientes errores que pueden discutirse conjuntamente:

1. La Corte de Distrito del Distrito Judicial de Arecibo cometió error manifiesto al estimar que de la prueba resulta que no existió el consentimiento necesario para llevar a efecto la cesión por parte de Victorio Arroyo Laracuente de la póliza número H–8092, aludida en la demanda.

2. La Corte de Distrito del Distrito Judicial de Arecibo cometió error manifiesto al no resolver que se probó el consentimiento.

3. La Corte de Distrito del Distrito Judicial de Arecibo cometió error al dictar sentencia en contra de la demandada.

La prueba oral de la demandante consistió del testimonio de Savino Valdés, administrador de reclamaciones de la Maryland Casualty Co., de Albert E. Copeland, gerente de Armour & Co. en Puerto Rico, y de Sinforoso Rovira Carbo, empleado también de la casa Armour & Co. Presentó además prueba documental consistente en la póliza núm. H-8092 y en seis cartas a que nos referiremos oportunamente.

El testimonio de Valdés revela que la Maryland Casualty Co. garantizaba a Victorio Arroyo Laracuente en el fiel desempeño de su cargo como vendedor de la casa Armour & Co. en el distrito de Arecibo; que en el ejercicio de sus funciones Arroyo no pudo rendir cuentas satisfactorias a la casa Armour & Co. de la suma de $4,466.23, por lo que ésta reclamó a la Maryland Casualty Co. dicha suma y la reclamación le fué aceptada; que Valdés entonces, en representación de la demandante, empezó a gestionar con Arroyo el reembolso de los referidos $4,466.23, y al efecto, le visitó en Arecibo el día 28 de octubre de 1933, quedando Arroyo en enviarle una póliza que recibiría de Estados Unidos, para que la examinara. Que el 31 de octubre de 1933, le escribió a Valdés en los siguientes términos:

"Oct. 31/33

"Sr. Savino Valdés,

"San Juan, P. R.,

"Muy Sr. mío y amigo:

"Por correo de ayer, según yo esperaba recibirla, no me ha llegado la póliza de California, para remitírsela a Ud. como quedé *para que la examinara para ver de efectuar el negocio que hablamos.* Yo creo que no ha de pasar de el correo próximo toda vez que falta poco para un mes que se ha mandado.

"De todos modos, le estoy incluyendo mi póliza No. H-8092 por $5,000 en la Buffalo Life Association para que la examine, *en carác-*

*ter devolutivo con sus sugestiones o mejor, al pasar Ud. por ésta
pronto, nos entenderíamos.   (Itálica nuestra.)*

"Quedando como siempre a sus órdenes, soy muy atentamente y
S. S.,

"(Fdo.)   Victorio Arroyo."

Que Valdés le contestó el 7 de noviembre de 1933, así:

"Noviembre 7, 1933

"4138–P. Rico
"Armour & Company,
"Victorio Arroyo.

"Sr. Victorio Arroyo,
"Arecibo, P. R.
"Muy Sr. n/ y amigo:

"Muchas gracias por su atenta 31 de octubre con la cual nos en-
viaba una póliza de la Buffalo Life Association por la cantidad de
$5,000.00.

"Suplicamos tenga la amabilidad de enviarnos la póliza de
$2,000.00 que usted ofreció mandarnos.

"Anticipándole las gracias, quedamos,

"Attos. amigos y ss. ss.,

"(Fdo.)   S. Valdés
"Mgr. P. Rico Claim Division."

Que el 18 de noviembre del mismo año, viniendo Valdés
de Mayagüez, visitó nuevamente a Arroyo, mostrándole éste
copia de la carta que le había escrito el día antes a San
Juan, y que Valdés no había tenido oportunidad de leer.
Dicha carta lee así:

"17 de noviembre, 1933.

"Sr. Savino Valdés,
"c/o Maryland Casualty Co.,
"San Juan, Puerto Rico.
"Muy señor mío y amigo:

"Oportunamente me favoreció su apreciable 7 de los corrientes
y de acuerdo con la misma y lo que habíamos hablado, habiendo re-
cibido ya la póliza de California, tengo el gusto de incluírsela *para
que se sirva examinarla y ver si es factible hacer el negocio hablado.*

"Tanto la póliza que anteriormente le remitiere de la Buffalo
Mutual Life Insurance Co. como la que le estoy incluyendo ahora de
la Occidental Life Insurance Co. tienen primas pagadas hasta me-

diados de diciembre próximo como podrá ver por los recibos incluídos en esta última, *por lo que le estimaré vea prontamente de resolver el negocio* ya que hay que atender esas primas so pena de exponerme a perjuicios por no pagarlas a su tiempo. (*Itálica nuestra.*)

"Esperando sus avisos me es grato quedar como siempre muy atentamente y amigo,

"(Fdo.) Victorio Arroyo.

"Inc. Póliza #D–4150 por $2,000 de la Occidental Life Ins. Co."

Que en dicha entrevista Arroyo convino en cederle definitivamente la póliza de $5,000; que él le explicó entonces la necesidad que había de que le cediera también la de $2,000 para atender al pago de las primas, ya que era imposible prever cuánto tiempo más viviría Arroyo. Que el 21 de noviembre de 1933 Valdés escribió a Arroyo en estos términos:

"Noviembre 21, 1933

"4138–P. Rico,

"Armour & Company,

"Victorio Arroyo.

"Sr. Victorio Arroyo,

"Arecibo, P. R.

"Muy Sr. mío:

"Acuso recibo de su atenta del 18 del corriente, como también de la póliza de $2,000.00 de la Western Mutual Life Association.

"Con relación a la póliza de $5,000.00 de la Buffalo Life Association debo informarle que el agente en ésta, quien lo es el Sr. W. R. Bennett, nos informa que esta póliza paga $5,000.00 solamente más un dividendo que no cubriría el importe de la prima por varios años, *por cuyo motivo se hace necesario que Ud. nos traspase ambas pólizas.*

"Esperaba recibir hoy copia de la carta de Ud. solicitando los papeles de transferencia a la Buffalo Life, pero no la he recibido y le ruego que al recibo de ésta solicite dichos papeles tanto a la Buffalo como a la Western Mutual por correo aéreo y no deje de enviarme copia de su carta. *Estoy deseoso de terminar este asunto y no dudo que Ud. también lo estará, a fin de dejar todo resuelto de la manera más satisfactoria posible.* (*Itálica nuestra.*)

"En espera de sus avisos por vuelta de correo quedo de Ud.

"Atentamente,

"(Fdo.) S. Valdés

"Mgr. P. Rico Claim Division."

Que como Arroyo no contestaba, Valdés le escribió nuevamente, en 23 de noviembre:

"Noviembre 23, 1933

"4138–P. Rico

"Armour & Company

"Victorio Arroyo.

"Sr. Victorio Arroyo,

"Arecibo, P. R.

"Muy Sr. n/ y amigo:

"Suplicamos encarecidamente su atención a nuestra carta de noviembre 21. Esperamos tendrá Ud. la amabilidad de enviarnos copia de la carta que le escriba a la Buffalo Life y a la Western Mutual.

"Sin otro particular quedamos,

"Atentamente,

"(Fdo.) S. Valdés
"Mgr. P. Rico Claim Div."

Que el 24 del mismo mes, Arroyo se dirigió a Valdés del modo siguiente:

"Nov. 24/33

"Sr. Savino Valdés,

"c/o Maryland Casualty Co.,

"San Juan, P. R.

"Muy Sr. mío y amigo:

"Tengo a la vista sus apreciables 21 y 23 del actual y tomé buena nota.

"Al recibir y leer su primera carta (Nov. 21) decidí no contestarle y esperar su próxima visita a ésta, que suponía a fin de semana, pues quería discutir con Ud. personalmente lo que Ud. informa acerca del valor de mi póliza por $5,000.00 de la Buffalo Life Insurance Co., tanto ahora como algunos años más tarde, pues creo ello un error.

"Al recibir su carta de ayer en la que me vuelve a pedir solicite los blancos para ambas pólizas, me permito avisarle que *he solicitado el blanco correspondiente para la póliza de $5,000.00*, como verá por la copia de la carta que he escrito al efecto con fecha 22 del corriente, *pero no así la otra por creerlo innecesario* y otros motivos que son obvios por ahora. Donde estaba yo el primer día en que empezamos a tratar este negocio a solicitud mía, estoy. *Por tanto, deseo que cuanto antes lleguemos a un acuerdo definitivo, cosa que cuando lle-*

*que el blanco que he solicitado esté todo ultimado y no haya más que hacer el traspaso. (Itálica nuestra.)*

"Le adjunto el último recibo de la póliza arriba descrita, el cual comprende los meses Oct., Nov. y Dic. 1933. Sírvase pues unirlo a la póliza y tomar nota.

"Sírvase devolverme la póliza por $2,000.00 de la Occidental y cuando pase por ésta se traerá la otra si es que Ud. desea que discutamos el asunto sobre la misma.

"Esperando sus avisos, me es grato quedar muy atentamente y S. S. S.,

"(Fdo.) Victorio Arroyo."

También dijo en repreguntas, que después de muerto Arroyo, mandó a un tal Arias, empleado de la Maryland Casualty Co., a Arecibo, para que gestionara por escrito de la viuda, como beneficiaria, la cesión de la póliza H–8092.

La resolución de este caso depende de la interpretación que demos a la correspondencia entre el asegurado Arroyo y la alegada cesionaria, con referencia al traspaso o cesión de las pólizas en satisfacción de la deuda de Arroyo a la casa de Armour & Co.

Hemos leído cuidadosamente toda la correspondencia y nos creemos justificados al resolver que la interpretación que a ella dió la corte inferior es correcta. Examinémosla detalladamente.

En su carta de octubre 31, 1933, o sea tres días después de su primera entrevista con Valdés, el asegurado Arroyo dice a Valdés que le envía la póliza núm. H–8092 *para que la examinara para ver de efectuar el negocio que hablamos*, y que hace el envío *en carácter devolutivo con sus sugestiones;* y añade, *o mejor, al pasar Ud. por ésta pronto, nos entenderíamos.* A esa carta contestó Valdés acusando recibo de dicha póliza y suplicando el envío de la otra póliza por $2,000.

Es evidente que esas dos cartas no constituyen un convenio entre las partes. Son ellas mera evidencia de negociaciones tendientes a llegar a un acuerdo.

Con su carta de noviembre 17 de 1933, Arroyo envió a Valdés la póliza de California de $2,000 *"para que se sirva examinarla y ver si es factible hacer el negocio hablado"*; y después de informarle que ambas pólizas tenían sus premios pagados hasta diciembre, añadía: *"por lo que estimaré vea prontamente de resolver el negocio."* Estas últimas palabras son una prueba clara de que hasta el 17 de noviembre el negocio que discutían Valdés y Arroyo estaba aún por resolver.

Alega Valdés en su declaración que se entrevistó con Arroyo el 18 de noviembre y que éste convino en cederle a la compañía demandante la póliza de $5,000 definitivamente. Veamos si la interpretación dada por Valdés a su entrevista con Arroyo, al efecto de que en ella se llegó a un traspaso definitivo de la póliza de $5,000, está corroborada por la correspondencia entre ambas partes posterior a la fecha de la entrevista.

En 21 de noviembre, 1933, Valdés escribe a Arroyo comunicándole que el agente de la Buffalo Life Association le ha informado que el dividendo de la póliza de dicha asociación no cubriría la prima por varios años, y le dice: "por cuyo motivo se hace necesario que Ud. nos traspase ambas pólizas." Y más adelante, en la misma carta, después de rogarle que solicite de las dos compañías aseguradoras los papeles necesarios para hacer el traspaso de las dos pólizas, dice Valdés: "Estoy deseoso de terminar este asunto y no dudo que Ud. también lo estará, a fin de dejar todo resuelto de la manera más satisfactoria posible."

A esta última carta contestó Arroyo en 24 del mismo mes informando a Valdés que había solicitado los blancos para el traspaso de la póliza de la Buffalo Life Association y añadía: "pero no así la otra por creerlo innecesario." Y en seguida decía:

". . . Donde estaba yo el primer día en que empezamos a tratar este negocio a solicitud mía, estoy. Por tanto, deseo que cuanto an-

tes lleguemos a un acuerdo definitivo, cosa que cuando llegue el blanco que he solicitado esté todo ultimado y no haya más que hacer el traspaso.''

Las dos cartas que acabamos de comentar se refieren claramente a un convenio que está aún en gestación y cuyos términos y condiciones no han sido definitivamente acordados entre las partes. Mientras Valdés insiste en que para cerrar definitivamente el negocio es necesario que Arroyo traspase a la demandante sus dos pólizas, la de cinco mil y la de dos mil dólares, éste reitera su oferta original de traspasar solamente la de cinco mil dólares, manifestando estar dispuesto a hacerlo cuando se llegue a un acuerdo definitivo y tan pronto llegue el blanco o formulario de la compañía.

Los hechos esenciales establecidos por toda la prueba pueden condensarse así: Arroyo, dueño de dos pólizas de seguro, era deudor de una suma a la demandante, y para satisfacer esa deuda ofreció transferir a su acreedor la póliza de $5,000. Insistió el acreedor en que debían traspasársele ambas pólizas por considerar que la de cinco mil no era bastante para su protección, toda vez que el acreedor tendría que pagar las primas mientras viviera el deudor. Replicó el deudor manifestando estar dispuesto a traspasar la póliza de $5,000, para lo cual ya había pedido los blancos necesarios, más no así la otra póliza por creerlo innecesario. Volvió a insistir el acreedor en que se le traspasaran ambas pólizas, para dejarlo todo resuelto satisfactoriamente. Dos días después de haber escrito su última carta a Valdés del 24 de noviembre, 1933, Victorio Arroyo falleció, dejando en poder de la demandante sus dos pólizas de seguro y sin haber terminado la discusión del negocio a que se refiere la correspondencia presentada.

El examen que hemos hecho de toda la evidencia nos lleva a la conclusión de que en este caso no existió nunca el consentimiento de los contratantes, sin cuyo requisito no puede

haber contrato, a tenor de que disponen los artículos 1213 y 1214 del Código Civil (ed. de 1930). Mientras la demandante exigía el traspaso de dos pólizas que totalizaban $7,000, como causa o consideración para dar por satisfecha la deuda de Arroyo, éste insistía en que su obligación fuese extinguida con sólo el traspaso de la póliza de cinco mil dólares envuelta en este litigio. No hubo, por lo tanto, contrato alguno entre Arroyo y la Maryland Casualty Company. a virtud del cual dicha compañía se convirtiera en dueña y beneficiaria de la póliza de la Buffalo Life Association. Arroyo falleció siendo aún deudor de la Maryland Casualty Company, pero siendo todavía dueño de sus dos pólizas, las que deben ser pagadas a los beneficiarios en las mismas designados.

*Por las razones expuestas se modifica la sentencia apelada, adicionándola en el sentido de que se disponga que la cantidad consignada como importe de la póliza H–8092 de la Buffalo Life Association, deberá ser pagada a la beneficiaria mediante la entrega de la póliza y los documentos que fueren necesarios para el resguardo del asegurador, y así modificada se confirma.*

El Juez Presidente Señor del Toro no intervino.