ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **ANA LYDIA VEGA MARTÍNEZ, BRENDA I. MONTAÑEZ SANTOS, CÁNDIDA R. FIGUEROA CASTRO y OTROS**<br><br>Apelantes<br><br>v.<br><br>**METRO CAGUAS INCORPORATED, B.V.R. AMBULANCE BEST CARE LLC**<br><br>Apelados | KLAN202500171 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Caguas**<br><br>Civil Núm.: **CG2024CV02388**<br><br>Sobre: Despido Injustificado (Ley Núm. 80), Procedimiento Sumario Bajo Ley Núm. 2 |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Boria Vizcarrondo, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de junio de 2025.

Comparece ante nos la señora Ana Lydia Vega Martínez y otros empleados (parte apelante) mediante un *Escrito de Apelación* en el que solicitan que revoquemos una *Sentencia de Desestimación por Falta de Jurisdicción* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, (TPI) el 27 de enero de 2025.[1] Por medio de dicho dictamen, el foro primario declaró Ha Lugar las solicitudes de desestimación por falta de jurisdicción presentadas por Metro Caguas Incorporated (Metro Caguas) y B.V.R. Ambulance Best Care LLC (B.V.R.).[2] Además, sostuvo que, de la parte apelante entenderlo procedente, esta debía radicar su reclamación dentro de los casos que ya habían iniciado Grupo HIMA San Pablo, Inc. (HIMA

---

[1] Apéndice del recurso de apelación, Anejo 1, pág. 1; Anejo 2, págs. 2-11. Notificada y archivada en autos el 29 de enero de 2025.
[2] *Íd.*, Anejo 34, págs. 673-990; *Íd.*, Anejo 36, págs. 995-1021.

San Pablo) y Jerusalén Home Ambulance, Inc. (Jerusalén Home) ante el Tribunal Federal de Quiebras.

Por su parte, el 31 de marzo de 2025, Metro Caguas radicó un *Alegato en Oposición de la Parte Apelada* y B.V.R. presentó un <u>*Alegato en Oposición de la Parte Apelada*</u> *B.V.R. Ambulance Best Care LLC.*

Por los fundamentos que pormenorizamos a continuación, revocamos la *Sentencia de Desestimación por Falta de Jurisdicción.*

## I.

El caso de marras tiene su génesis el 4 de julio de 2024 cuando la parte apelante, compuesta por cuarenta y siete (47) empleados, presentó una *Querella* en contra de Metro Caguas y B.V.R. en concepto de despido injustificado bajo el procedimiento sumario y la teoría de patrono sucesor.[3]

Posteriormente, la *Querella* fue enmendada en dos ocasiones; a saber, para incluir a una querellante adicional y,[4] luego, para mencionar la relación de varias entidades corporativas con los querellantes.[5]

Por su parte, Metro Caguas y B.V.R. radicaron sus respectivas contestaciones a las querellas enmendadas.[6]

El 1 de agosto de 2024, el TPI emitió una *Sentencia Parcial por Desistimiento* en la que acogió la solicitud de desistimiento sin perjuicio de una de las querellantes.[7]

El foro *a quo* también emitió una *Resolución de Conversión a Procedimiento Civil Ordinario* el 9 de agosto de 2024.[8]

---

[3] *Íd.*, Anejo 5, págs. 21-54; véase, además, *Ley sobre Despidos Injustificados*, Ley Núm. 80 del 30 de mayo de 1976 (Ley Núm. 80-1976), según enmendada, 29 LPRA secs. 185a *et seq.*; *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 del 17 de octubre de 1961, según enmendada, 32 LPRA secs. 3118 *et seq.*

[4] *Íd.*, Anejo 7, pág. 59; *Íd.*, Anejo 8, págs. 60-93.

[5] *Íd.*, Anejo 25, págs. 346-348; *Íd.*, Anejo 26, págs. 349-383.

[6] *Íd.*, Anejo 12, págs. 97-180; *Íd.*, Anejo 14, págs. 192-319; *Íd.*, Anejo 32, págs. 425-518; *Íd.*, Anejo 33, págs. 519-672.

[7] *Íd.*, Anejo 19, pág. 331. Notificada y archivada en autos el 1 de agosto de 2024.

[8] *Íd.*, Anejo 24, págs. 344-345. Notificada y archivada en autos el 9 de agosto de 2024.

Luego de múltiples trámites procesales, Metro Caguas radicó una *Moción de Desestimación por Falta de Jurisdicción* el 13 de diciembre de 2024. Por medio de esta, adujo que cuando el HIMA San Pablo presentó una petición voluntaria de reorganización, a tenor con el Capítulo 11 del Código de Quiebras, 11 USCA secs. 101 *et seq.*, ante el Tribunal Federal de Quiebras, dicho foro asumió jurisdicción sobre el caudal de HIMA San Pablo. Expuso que las partes del pleito de quiebra prepararon un *Sale Motion* y alcanzaron un *Asset Purchase Agreement* de Metro Caguas (APA de Metro Caguas), por medio de los cuales acordaron y se obligaron a unos asuntos relacionados a la compraventa de los activos del HIMA San Pablo a Metro Caguas.

Indicó además que, posteriormente, el Tribunal Federal de Quiebras emitió una *Order Approving Purchase and Sale Agreements of Grupo HIMA Caguas Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims Interests and Encumbrances* (Sale Order de Metro Caguas) en la que aprobó la compraventa y transferencia de activos de HIMA San Pablo a Metro Caguas. Metro Caguas alegó que dicha orden establecía, en lo pertinente, que el Tribunal Federal de Quiebras conservaba y retenía la jurisdicción exclusiva para interpretar y hacer cumplir las disposiciones del APA y del Sale Order de Metro Caguas; y conservaba la jurisdicción para atender y emitir determinaciones sobre las controversias o reclamaciones que pudieran surgir de o que estuviesen relacionadas a dicha orden y APA. Arguyó igualmente que el Sale Order de Metro Caguas disponía que la transferencia de activos a Metro Caguas se había realizado libre de toda carga, gravamen o reclamación, eximiendo a Metro Caguas de toda responsabilidad atribuible al vendedor bajo la doctrina de patrono sucesor. Por último, Metro Caguas solicitó la desestimación

del pleito de epígrafe por falta de jurisdicción sobre la materia y por campo ocupado.

Por su parte, B.V.R. radicó una *Moción de Desestimación por Falta de Jurisdicción y Solicitud de Paralización* el 13 de diciembre de 2024 con los mismos planteamientos realizados por Metro Caguas, pero con relación a una *Order Approving Purchase and Sale Agreement of Jerusalen Home Ambulance, Inc. Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims Interests and Encumbrances* (Sale Order de B.V.R.). En lo pertinente, por medio de dicha orden, el Tribunal Federal de Quiebras aprobó la compraventa y transferencia de activos de Jerusalén Home y B.V.R. libre de toda carga, gravamen o reclamación.

El 21 de enero de 2025, la parte apelante radicó una *Oposición Conjunta a Mociones de Desestimación.*[9] Alegó que el despido por parte del HIMA San Pablo (Centro Médico del Turabo, Inc. y de Jerusalén Home) fue efectivo el 20 de diciembre de 2023, fecha en que Metro Caguas y B.V.R. comenzaron a operar el hospital, sin retener a la parte apelante. Expuso, además, que el Tribunal Supremo en *Rodríguez v. Urban Brands,* 167 DPR 509 (2006), y un panel hermano de este Tribunal en *Cortés Pacheco v. Marina PDR Operations, LLC,* KLAN202300106, consideraron los mismos argumentos que Metro Caguas y B.V.R. realizaron en el pleito de epígrafe. La parte apelante arguyó que nuestro máximo foro resolvió en *Rodríguez v. Urban Brands, supra,* que la venta de activos bajo un procedimiento federal de quiebras, aunque fuese catalogada como libre de gravámenes, no era impedimento para la aplicación de la doctrina de patrono sucesor. Asimismo, sostuvo que una cláusula de un acuerdo privado y de una orden emitida por el

---

[9] *Íd.,* Anejo 45, págs. 1283-1723.

Tribunal Federal de Quiebras que dispusiera que un asunto estatal era de jurisdicción exclusiva de dicho foro era nula.

Después de varios trámites procesales, el foro primario emitió una *Sentencia de Desestimación por Falta de Jurisdicción* el 27 de enero de 2025 donde declaró Ha Lugar las solicitudes de desestimación por falta de jurisdicción presentadas por Metro Caguas y B.V.R. Fundamentó su dictamen en que:

> Sin restarle validez ni importancia a los argumentos expuestos por los Querellantes, y dando por bueno los mismos, conforme arriba expuestos, entendemos los mismos no son de aplicación al caso en marras por la sencilla razón de que el acuerdo de venta de activos de HIMA San Pablo a Metro Caguas y el de Jerusalén Home Ambulance Inc. a BVR **contenían el acuerdo entre las partes de que cualquier controversia relacionada a los mismos se le adjudicaba o reservaba al Tribunal de Quiebras**. Dicho acuerdo es perfectamente válido pues no es contrario a la ley, la moral ni el orden público. El Tribunal de Quiebras avaló dicho acuerdo. Esto no quiere decir que el Tribunal de Quiebras ´arrebató´ la jurisdicción sobre las controversias habidas en los acuerdos.
>
> **La jurisdicción del Tribunal de Quiebras sobre las controversias en marras, a saber: a) la debida notificación del proceso de quiebra a los Querellantes; b) la aplicación de la doctrina de patrono sucesor; y c) la procedencia de la mesada de los Querellantes, se deben traer ante dicho foro, pues así se dispuso contractualmente, y avaló judicialmente.**[10]

(Énfasis suplido en el original).

Además, sostuvo que, de la parte apelante entenderlo procedente, debía radicar su reclamación dentro de los casos que ya habían iniciado HIMA San Pablo y Jerusalén Home ante el Tribunal Federal de Quiebras.

Insatisfecha, la parte apelante presentó una *Moción de Reconsideración* el 10 de febrero de 2025 en la que reiteró los mismos planteamientos.[11] En lo pertinente, arguyó que la responsabilidad del patrono sucesor era un asunto de derecho

---

[10] *Íd.*, Anejo 2, pág. 10.
[11] *Íd.*, Anejo 3, págs. 12-19.

estatal y que no estaba relacionado a la quiebra. Además, adujo que tanto el acuerdo privado como la orden del Tribunal Federal de Quiebras no privaron al TPI de jurisdicción ni le concedieron al Tribunal Federal de Quiebras jurisdicción sobre dicho asunto estatal.

El 11 de febrero de 2025, el foro primario emitió una *Orden* en la que denegó la solicitud de reconsideración.[12] Sostuvo que, la parte apelante tenía que presentar sus reclamos ante el Tribunal Federal de Quiebras, conforme a los acuerdos estipulados.

Inconforme, la parte apelante presentó ante nos un recurso de apelación el 28 de febrero de 2025 y planteó los siguientes señalamientos de error:

> **(A) COMETIÓ EL TPI ERROR DE DERECHO AL DECRETARSE SIN JURISDICCIÓN EN EL CASO DEBIDO A QUE LA CONTROVERSIA DEL CASO ES UNA ESTATAL, SEGÚN REITERADAMENTE RESUELTO POR LA JURISPRUDENCIA EN TODO ESTADOS UNIDOS Y PUERTO RICO, LO QUE LE[S] BRINDA PLENA JURISDICCIÓN A LOS TRIBUNALES DE PRIMERA INSTANCIA.**
>
> **(B) COMETIÓ EL TPI ERROR DE DERECHO AL DECRETARSE SIN JURISDICCIÓN YA QUE LA JURISDICCIÓN DEL TRIBUNAL ESTATAL SOBRE EL ASUNTO, AUN ASUMIENDO COMO CORRECTA LA TEORÍA DE LAS APELADAS, SERÍA CONCURRENTE CON LAS CORTES DE QUIEBRA, <u>LO QUE OBLIGA AL TPI A ATENDER LOS ASUNTOS DE ESTE CASO; TODO LO ANTERIOR ESTÁ BASADO EN JURISPRUDENCIA CENTENARIA Y TRILLADA DE LOS TRIBUNALES DE ESTADOS UNIDOS Y PUERTO RICO.</u>**
>
> **(C) VIOLÓ EL TPI EL DERECHO CONSTITUCIONAL DE LOS APELANTES A TENER ACCESO A LOS TRIBUNALES.**

La parte apelante también presentó varias mociones para que tomáramos conocimiento judicial sobre las determinaciones de los casos KLAN202401020 consolidado con KLCE202401254; KLCE202500277; y KLCE202500292 emitidas por paneles hermanos de esta Curia.

---

[12] *Íd.*, Anejo 4, pág. 20. Notificada y archivada en autos el 12 de febrero de 2025.

Por su parte, Metro Caguas radicó un *Alegato en Oposición de la Parte Apelada* el 31 de marzo de 2025. Alegó que la revocación del dictamen emitido por el foro primario constituiría una invitación a ignorar una orden válida, firme y vinculante del Tribunal Federal de Quiebras.

El 31 de marzo de 2025, B.V.R. presentó un <u>*Alegato en Oposición de la Parte Apelada*</u> *B.V.R. Ambulance Best Care LLC*. En síntesis, sostuvo que el Tribunal Federal de Quiebras había establecido en su orden que mantenía jurisdicción exclusiva para interpretar, establecer y hacer cumplir las disposiciones del *Asset Purchase Agreement* de B.V.R. (APA de B.V.R.) y <u>Sale Order de B.V.R.</u> en todos sus aspectos y, para atender y determinar todas y cada una de las reclamaciones que surgieran de o que estuviesen relacionadas con la venta y transferencia de los activos, documentos de cierre, negociación o participación bajo cualesquiera de los documentos de cierre.

**II.**

**A.**

La jurisdicción es el poder o la autoridad que tienen los tribunales para considerar y resolver casos o controversias. *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135, 144 (2023); *Administración de Terrenos de Puerto Rico v. Ponce Bayland Enterprises, Inc.*, 207 DPR 586, 600 (2021); *Allied Management Group, Inc. v. Oriental Bank*, 204 DPR 374, 385 (2020); *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, 204 DPR 89, 101 (2020). Es por ello que los tribunales deben ser celosos guardianes de su jurisdicción y los asuntos sobre esta deben atenderse con primacía. *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019); *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018); *Cordero v. ARPe*, 187 DPR 445, 457 (2012). *Allied Management Group, Inc. v. Oriental Bank*, *supra*, pág. 386; *S.L.G. Szendry Ramos v. F. Castillo*, 169 DPR 873,

882 (2007). Específicamente, para adjudicar un caso ante sí, los tribunales deben ostentar jurisdicción sobre la materia y sobre la persona. *Colón Vega v. Díaz Lebrón*, 211 DPR 548, 559 (2023); *MCS Advantage, Inc. v. Fossas Blanco, supra*, pág. 600; *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico, supra*, pág. 101. Lo anterior ya que una sentencia dictada sin jurisdicción es nula en derecho, y, por ello, inexistente. *Pérez Rodríguez v. López Rodríguez*, 210 DPR 163, 178 (2022); *Allied Management Group, Inc. v. Oriental Bank, supra*, pág. 386; *Montañez v. Policía*, 50 DPR 917, 921 (2000). Asimismo, la falta de jurisdicción conlleva serias consecuencias: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*. *Allied Management Group, Inc. v. Oriental Bank, supra*, pág. 386; *Fuentes Bonilla v. ELA*, 200 DPR 364, 372-373 (2018). A causa de ello, los foros adjudicativos deben examinar no solo su propia jurisdicción sino también la del foro inferior. *Allied Management Group, Inc. v. Oriental Bank, supra*, pág. 387; *Pearless Oil v. Hermanos Pérez*, 186 DPR 239, 250 (2012); *S.L.G. Szendry Ramos v. F. Castillo, supra*, pág. 883. Igualmente, cuando un tribunal determina que no ostenta jurisdicción para intervenir en un asunto, procede la inmediata desestimación del recurso apelativo. *Allied Management Group, Inc. v. Oriental Bank, supra*, págs. 386-387; *Pearless Oil v. Hermanos Pérez, supra*, pág. 250; *S.L.G. Szendry Ramos v. F. Castillo, supra*, pág. 883. Lo anterior pues, los tribunales carecen de discreción para asumir jurisdicción donde no la hay. *S.L.G. Szendry*

*Ramos v. F. Castillo, supra,* pág. 882; *Morán v. Martí,* 165 DPR 356, 364 (2005); *Souffront v. A.A.A.,* 164 DPR 663, 674 (2005).

**B.**

Por otro lado, en nuestra jurisdicción rige el principio de libre contratación. *Bobe v. UBS Financial Services*, 198 DPR 6, 15 (2017). Ante ello, cuando las partes contratantes efectúan un negocio jurídico, estas pueden incluir las cláusulas y condiciones que estimen necesarias, siempre y cuando no sean contrarias a la ley, la moral ni al orden público. Artículo 1207 del *"Código Civil de Puerto Rico" Edición de 1930* (Código Civil de 1930), 31 LPRA ant. sec. 3372. Asimismo, las obligaciones que nacen de los contratos tendrán fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos. Artículo 1044 del Código Civil de 1930, *supra,* ant. sec. 2994. Por lo tanto, "si existen las condiciones necesarias para su validez, los tribunales no pueden relevar a una parte de cumplir con lo que se obligó". *Bobe v. UBS Financial Services, supra,* pág. 15; *Asoc. Res. Los Versalles v. Los Versailles*, 194 DPR 258, 267 (2015). Como parte de la voluntad e intención de las partes contratantes, estas pueden incorporarles a sus contratos una cláusula de selección de foro. *Bobe v. UBS Financial Services, supra,* pág. 15.

**C.**

La doctrina de patrono sucesor fue incorporada jurisprudencialmente a nuestro ordenamiento jurídico con el propósito de "atender situaciones en que una operación comercial cambia de dueño y es preciso determinar los derechos de los empleados frente al nuevo patrono". *Rodríguez v. Urban Brands, supra,* págs. 514-515. La aplicación de esta norma "ocurre en el contexto de una venta o transferencia de activos o reorganización de un negocio, siempre que haya una similitud sustancial en la operación y una continuidad sustancial en la identidad de la

empresa, antes y después del cambio". *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 991 (2022). Cuando aplica dicha doctrina, se entiende que un patrono que sustituye a otro por transferencia de activos o fusión corporativa asume las obligaciones que contrajo el anterior. *Rodríguez v. Urban Brands, supra*, pág. 515; *Piñeiro v. Int'l Air Serv. of PR, Inc.*, 140 DPR 343, 350 (1996). El único propósito de esta doctrina es "responsabilizar al nuevo patrono por las obligaciones laborales o actos ilegales del patrono anterior". *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 991 (Énfasis suplido en el original eliminado). Además, responde a "la necesidad de establecer un equilibrio entre el derecho del empresario a 'organizar independientemente su actividad económica' y la necesidad de reconocer 'alguna protección a los empleados por el cambio súbito en la relación obrero-patronal' " *Rodríguez v. Urban Brands, supra*, pág. 515 (*citando a J.R.T. v. Coop. Azucarera*, 98 DPR 314, 325 (1970)). Para determinar la existencia de esa similitud y continuidad, se deben evaluar los siguientes factores: (1) la existencia de una continuación sustancial de la misma actividad de negocios; (2) la utilización de la misma planta o instalación para sus operaciones; (3) el empleo de la misma, o sustancialmente la misma, fuerza obrera; (4) la conservación del mismo personal de supervisión; (5) la utilización del mismo equipo o maquinaria, y el empleo de los mismos métodos de producción; (6) la producción de los mismos productos y la prestación de los mismos servicios; (7) la retención del mismo nombre, y (8) la operación del negocio durante el período de transición. Aun así, ninguno de estos factores es de por sí solo determinante. *Segarra Rivera v. International Shipping Agency, Inc., supra*, págs. 991-992.

Dado a que el único propósito de esa doctrina es responsabilizar al nuevo patrono por las obligaciones laborales o los

actos ilegales del patrono anterior, los tribunales deben identificar primero la existencia de una obligación laboral o un acto ilegal imputable al patrono anterior. Luego de establecer esto, podrán examinar si aplica la doctrina de patrono sucesor. Por ende, esta doctrina no aplica cuando se establece que el despido del patrono anterior fue justificado. *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 991.

Ahora bien, en *Rodríguez v. Urban Brands, supra*, a nuestro máximo foro le tocó resolver, entre otros asuntos, si la venta de activos libre de gravámenes o *free of liens* bajo un procedimiento federal de quiebras exceptuaba la aplicación de la doctrina de patrono sucesor a una reclamación por despido injustificado.

En dicho caso, la señora Evelyn Rodríguez Oquendo (Sra. Rodríguez Oquendo) presentó una reclamación sobre despido injustificado y discrimen por razón de edad en contra de la corporación dueña de Tiendas Marianne en Puerto Rico, llamada Petrie Retail, Inc. (Petrie). Luego de celebrar el juicio, el TPI emitió una sentencia en rebeldía donde declaró con lugar la querella y condenó a Petrie a pagarle a la Sra. Rodríguez Oquendo unas cantidades de dinero como penalidad por el despido injustificado y por discrimen por razón de edad. Posteriormente, Urban Brands, Inc. (Urban) compareció ante el foro primario, sin someterse a la jurisdicción de dicho foro, para que paralizara la ejecución de dicha sentencia y dejara sin efecto el embargo de unas cuentas bancarias. Adujo que le había comprado a Petrie los activos de las Tiendas Marianne como parte de un proceso de quiebras, y que la referida transacción había sido libre de gravámenes. Sin embargo, sostuvo el alto foro, que la Sra. Rodríguez Oquendo desconocía que, como parte del proceso de quiebras, Petrie le había transferido los activos de las Tiendas Marienne a Urban diez (10) meses antes del

emplazamiento de Petrie, es decir, dos (2) meses después del despido.

Luego de celebrar unas vistas, el foro de instancia emitió una resolución en la que determinó que Urban era patrono sucesor de Petrie, y, en su consecuencia, declaró sin lugar la moción para que se dejara sin efecto el embargo y la paralización de la ejecución de la sentencia. Posteriormente, un panel hermano de este Tribunal expidió un *certiorari* radicado por Urban y revocó el dictamen del foro *a quo*. Fundamentó su determinación en que la adquisición de activos libre de gravámenes como parte de un proceso de quiebras impedía la aplicación de la doctrina de patrono sucesor, y aunque no hubiese impedimento para la aplicación de dicha doctrina, la prueba presentada había sido insuficiente para demostrar que la doctrina debía aplicarse al caso.

Nuestro más alto foro, no obstante, revocó el dictamen de nuestro panel hermano. Dispuso que sin duda existía jurisprudencia en la que se había resuelto que una venta de activos aprobada por el Tribunal de Quiebras; es decir, libre de toda reclamación, excluía la aplicación de la doctrina de responsabilidad del sucesor contra el comprador de esos activos. *Rodríguez v. Urban Brands*, *supra*, pág. 520. Sin embargo, expuso que, existía una línea de jurisprudencia federal de mayor peso cuestionando la autoridad de los tribunales de quiebras para detener la aplicación de esta doctrina. Además, indicó que la vertiente jurisprudencial que rehúsa reconocer una limitación a la aplicación de las diferentes doctrinas de responsabilidad del sucesor por el mero hecho de que la venta se dio en el contexto de un proceso de quiebras, no era cónsona con la política pública del campo laboral. Por lo tanto, resolvió que "*la venta de activos bajo un procedimiento federal de quiebras, aunque sea libre de gravámenes ("free of liens"), no es impedimento para aplicar la doctrina de patrono sucesor según desarrollada por nuestros*

*precedentes*". (Énfasis suplido en el original). *Rodríguez v. Urban Brands, supra,* pág. 522.

**III.**

Por estar íntimamente relacionados, discutiremos en conjunto los señalamientos de error presentados por la parte apelante. De este modo, nos corresponde resolver si el foro primario poseía jurisdicción para atender la controversia del caso de epígrafe y si el TPI violó el derecho constitucional de la parte apelante a tener acceso a los tribunales, luego de determinar que el Tribunal Federal de Quiebras era el foro con jurisdicción para atender la reclamación en cuestión.

A juicio del foro primario, procedía la desestimación de la causa de acción por despido injustificado a favor de B.V.R. y Metro Caguas por falta de jurisdicción. Fundamentó su dictamen en que los acuerdos de ventas entre HIMA San Pablo y Metro Caguas, y Jerusalén Home a B.V.R. disponían que cualquier controversia relacionada a los mismos se le reservaba al Tribunal Federal de Quiebras. Además, determinó que esos acuerdos eran válidos y que el Tribunal Federal de Quiebras los había avalado. Por ende, sostuvo que las controversias sobre la notificación del proceso de quiebras, la aplicación de la doctrina de patrono sucesor, y la procedencia de la mesada tenían que presentarse ante el Tribunal Federal de Quiebras.

Insatisfecha, la parte apelante sostuvo ante nos que la controversia sobre despido injustificado, el pago de mesada y la doctrina de patrono sucesor, conforme al precedente de *Rodríguez v. Urban Brands, supra,* y lo resuelto en *Cortés Pacheco v. Marina PDR Operations, LLC, supra,* eran asuntos estatales. En la alternativa, expuso que el TPI tenía jurisdicción concurrente con el Tribunal Federal de Quiebras. De igual modo, la parte apelante

adujo que, ante la determinación apelada, le violó el derecho constitucional de tener acceso a los tribunales.

Por su parte, Metro Caguas y B.V.R. arguyeron que el Tribunal Federal de Quiebras había establecido en los Sale Orders que mantenía jurisdicción exclusiva para interpretar, establecer y hacer cumplir las disposiciones de los Sale Orders y APAs en todos sus aspectos y, para atender y determinar todas y cada una de las reclamaciones o disputas que surgieran o que estuviesen relacionadas con la venta y transferencia de los activos. Además, B.V.R. expuso que la decisión apelada no eliminaba la oportunidad de la parte apelante de reclamar los derechos que entendía que le fueron afectados como resultado de la quiebra. Además, Metro Caguas arguyó que la parte apelante tenía conocimiento de la venta de activos, pero optó por quedarse con los brazos cruzados.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario incidió en los señalamientos de error planteados por la parte apelante.

Según la *Sentencia de Desestimación por Falta de Jurisdicción* apelada, el foro primario determinó que no poseía jurisdicción, ya que, según los Sale Orders, las partes contratantes habían acordado que cualquier controversia relacionada a los mismos se le adjudicaba o reservaba al Tribunal Federal de Quiebras. Específicamente, resolvió que el Tribunal Federal de Quiebras tenía jurisdicción sobre las siguientes controversias: a) la debida notificación del proceso de quiebra a la parte apelante; b) la aplicación de la doctrina de patrono sucesor; y c) la procedencia de la mesada de la parte apelante.

Inconforme, la parte apelante adujo que el foro primario poseía jurisdicción para atender la controversia del caso de epígrafe. Le asiste la razón a dicha parte.

En lo pertinente, del Sale Order de Metro Caguas se desprende que:

> 36. **The [Bankruptcy] Court shall retain exclusive jurisdiction to interpret, construe and enforce the provisions in the Sale Order and the Asset Purchase Agreement**, in all respects and, further, **to hear and determine any and all disputes or claims arising under or related to the Sale and transfer of the Assets**, the corresponding Closing documents, or the Purchasers' and the Parties' involvement, negotiation, or participation under any of the corresponding Closing documents, except that any agreements, issues, or disputes related to the Medicare program or programs administered by HRSA shall be governed exclusively by the applicable Federal statutes, regulations, rules and procedures, without regard to the Bankruptcy Code or Bankruptcy Rules.
>
> . . . .[13]

(Énfasis suplido).

Asimismo, el Sale Order de B.V.R. incluye una cláusula análoga.[14]

De estas disposiciones se puede colegir que las partes acordaron que el Tribunal Federal de Quiebras tendría jurisdicción exclusiva sobre cualquier disputa que surgiera entre las mismas partes con relación a una interpretación de los Sale Orders y los APAs, o cualquier controversia que surgiera relacionada al negocio jurídico que estaban llevando a cabo. En otras palabras, el efecto de los acuerdos entre las partes no se extendió más allá de las controversias descritas. Ciertamente, el despido de la parte apelante es una controversia de naturaleza laboral entre empleados y patronos que nada tiene que ver con los Sale Orders y APAs. En vista de que el Tribunal Federal de Quiebras tenía jurisdicción exclusiva para interpretar los Sale Orders y APAs, o cualquier controversia que surgiera relacionada al negocio jurídico allí dispuesto, y la controversia sobre el despido no caía bajo lo anterior, el Tribunal Federal de Quiebras no tenía jurisdicción exclusiva sobre la

---

[13] *Íd.*, Anejo 34, pág. 757.
[14] *Íd.*, Anejo 36, págs. 1064-1065.

controversia del alegado despido injustificado. Por ende, contrario a lo resuelto por el TPI, el foro primario poseía jurisdicción para atender la controversia de marras.

En esa misma línea, el TPI también dictaminó que le tocaba al Tribunal Federal de Quiebras decidir si aplicaba la doctrina de patrono sucesor. A esos efectos, de la *Sentencia de Desestimación por Falta de Jurisdicción* apelada surgen las siguientes cláusulas del Sale Order de Metro Caguas, y que el Sale Order de B.V.R. incorporó de forma análoga:

> **I.** The transfer of the Assets to METRO CAGUAS INCORPORATED as authorized by this Sale Order, will constitute a legal, valid, and effective transfer of each of the Assets and, under Section 363 of the Bankruptcy Code, and with the benefits of the transfer tax exemption provided for by 11 U.S.C. § 1146(a), **the transfer of the title of the Assets shall be free and clear of all liens, claims and encumbrances against or with respect to any of the Debtors or in, on, or against or with respect to any of the Assets, including, but not limited to:** (a) the Existing Liens, (b) those that arise from mortgages, security interests, attachments, or other similar liens on the Assets, whether consensual, statutory, possessory, judicial or otherwise, (c) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or any other party's interest in the Assets, or any similar rights, (d) claims, debts, encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to: (i) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and

regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise; **(ii) all debts, liabilities, obligations, contractual rights and claims, including, but not limited to, those related to utilities and those related to homeowners' association fees, including those accrued as of the filing of the Chapter 11 Cases, and labor, employment, and pension claims**; (iii) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or METRO CAGUAS INCORPORATED's interest in the Assets, or any similar rights; (iv) **any rights under labor or employment agreements**; (v) any rights under pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "**ERISA**"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vi) **any liabilities of Debtors for any present or former employees, officers, directors, members, retirees, independent contractors or consultants of Debtors, including, without limitation, any liabilities associated with any claims for wages or other benefits, bonuses, insurance, back pay, overtime, union dues, meal period payments, reinstatement, profit sharing, requirement and/or other deferred compensation, sick pay, accrued vacation, workers' compensation, severance, retention, termination, severance, or other payments (the preceding shall include, but not be limited to the following: any and all liabilities or obligations** (including without limitation any and all penalties, fines, settlements, interests, costs or expenses) arising out of or incurred in connection with any and all claims, litigation or legal proceedings associated with, arising out of or in connection with any and all claims, arbitration awards, judgments, litigation or legal proceedings (whether instituted prior to or after the Closing) of any employee or employees (whether hired by METRO CAGUAS INCORPORATED or not), for any severance liability, reinstatement, back pay liability, debts, termination, failure to notify, failure to bargain, negligent or willful acts, errors, omissions, breach of contract, breach of Stipulation, breach of Collective Bargaining Agreement, misconduct, termination, employee seniority accrued while employed with Seller and successorship liability, retaliation, discrimination or discriminatory practices, asserted by or committed against any employee, and liabilities of whatever kind or nature in law, equity or otherwise, whether known or unknown, which occurred, or arise from events that occurred, prior to the Closing Date**; any and all liabilities or obligations, union dues, severance obligations, (including without limitation any and all penalties, fines,**

**settlements, interests, costs or expenses, back pay, damages, under any local, state, federal or Commonwealth of Puerto Rico labor and employment laws, (including without limitation: any and all claims under the WARN Act, Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. § 2000e** *et seq.***; Executive Order 11246, as amended; the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621** *et seq.***;** . . . .

. . . .

### NO ASSUMPTION OF LIABILITIES

13. **Neither METRO CAGUAS INCORPORATED** nor its designees, successors, assigns or transferees, **shall be obligated or liable**, either directly or indirectly, as successor, transferee or otherwise, **for any liabilities or interests of the Debtors**, sellers, or any of theirs affiliates (whether under federal or state law or the laws of the Commonwealth of Puerto Rico or otherwise) **as a result of the sale of the Assets**, including, without limitation, any retention agreements entered into by Debtors prepetition or post-petition or assumed post-petition by order of this Court or otherwise. Neither METRO CAGUAS INCORPORATED nor its designees, successors, assigns or transferees, shall be or be deemed to be a successor or successor in interest or responsible person or potentially responsible person to Debtors or any current or former creditor, equity holder or other party in interest with respect to any liability or interest, and none shall have any liability (whether under federal or state law or the laws of the Commonwealth of Puerto Rico or otherwise) for successor liability, including, without limitation, with respect to any liabilities or interests arising from or under products liability, tax, environmental, employment or other laws and statutes of the United States, and any of its states, territories and possessions, including the Commonwealth of Puerto Rico.

. . . .[15]

De estas disposiciones parecería que, en el pleito de marras, no se podía aplicar la doctrina de patrono sucesor. Sin embargo, según pormenorizamos anteriormente, nuestro más alto foro indicó que la vertiente jurisprudencial que rehúsa reconocer una limitación a la aplicación de las diferentes doctrinas de responsabilidad del sucesor por el mero hecho de que la venta se dio en el contexto de un proceso de quiebras, **no es cónsona con la política pública del**

---

[15] *Íd.*, Anejo 34, págs. 738-740, 746-747; *Íd.*, Anejo 36, págs. 1048-1050, 1057.

**campo laboral**. *Rodríguez v. Urban Brands, supra*. Por lo tanto, resolvió que "*la venta de activos bajo un procedimiento federal de quiebras, aunque sea libre de gravámenes ("free of liens"), **no es impedimento para aplicar la doctrina de patrono sucesor** según desarrollada por nuestros precedentes*". (Énfasis suplido en el original). *Rodríguez v. Urban Brands, supra*, pág. 522. En el presente caso, HIMA San Pablo y Metro Caguas, y Jerusalén Home y B.V.R., estipularon que la transferencia de activos era libre de toda carga, gravamen o reclamación. Conforme a la norma establecida en *Rodríguez v. Urban Brands, supra*, pág. 522, ciertamente, el mero hecho de que la venta de los activos se dio dentro de un proceso de quiebras, no era óbice para aplicar la doctrina de patrono sucesor. Por lo tanto, del despido ser injustificado, el TPI también tendría jurisdicción para examinar si aplica la doctrina de patrono sucesor. *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 991.

En segundo lugar, la parte apelante expuso que la *Sentencia de Desestimación por Falta de Jurisdicción* apelada violó su derecho constitucional a tener acceso a los tribunales.

Según pormenorizamos anteriormente, dos de los requisitos necesarios para satisfacer las exigencias mínimas del debido proceso de ley, en su vertiente procesal, son un proceso ante un juez imparcial y la oportunidad de ser oído. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1, ed. 2017, págs. 304-305; Enms. V y XIV Const. EE.UU., LPRA, Tomo 1 Tomo 1, ed. 2017, págs. 191, 209. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33; *Vázquez González v. Mun. San Juan*, 178 DPR 636, 643 (2010). De igual modo, y en lo pertinente, las obligaciones que nacen de los contratos tienen fuerza de ley **entre las partes contratantes**. Artículo 1044 del Código Civil de 1930, *supra*, ant. sec. 2994.

En el caso de epígrafe, los acuerdos alcanzados entre las partes contratantes- HIMA San Pablo y Metro Caguas, y Jerusalén Home a B.V.R.- consistieron en que el Tribunal Federal de Quiebras era el foro con jurisdicción para atender controversias sobre la interpretación de los APAs y Sale Orders, y las que surgieran de o estuviesen relacionadas con la venta y transferencia de los activos. Sin embargo, la parte apelante no formó parte de dichos pactos. Ciertamente, un tercero no está compelido a cumplir con las estipulaciones de un pacto ajeno a esta. *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 1004 (2024). Conforme a lo anterior y los acuerdos en cuestión, la parte apelante no estaba obligada a acudir al Tribunal Federal de Quiebras para que este atendiera la acción de despido injustificado, pues dicho foro no tenía jurisdicción exclusiva sobre dicho asunto. En su consecuencia, al desestimar el pleito de autos, el foro primario privó a la parte apelante de su día en corte, e incidió sobre su debido proceso de ley.

**IV.**

Por las razones discutidas anteriormente, revocamos la *Sentencia de Desestimación por Falta de Jurisdicción* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones